**MABEL C. REID of Pago Pago, TU'UAIMAU
ALAPATI of Utulei, Objectors**

**v.**

**TALALELE NUAEA of Pago Pago, Applicant**

No. 93-1963

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Title: "Tali" of Pago Pago]

February 19, 1964

Heard before ROEL, *Associate Justice*, and MASANIAI
and MALAUULU, *Temporary Associate Judges*, on
February 17, 18 and 19, 1964.

Mabel C. Reid, Counsel *pro se*.

Lolo, Counsel for Tu'uaimau Alapati.

Leota, Counsel for Talalele Nuaea.

### OPINION OF THE COURT

ROEL, *Associate Justice*.

■ On July 5, 1963 Talalele Nuaea, hereinafter referred to as Talalele, filed his application with the Registrar of Titles to be registered as the holder of the matai title Tali, attached to the Village of Pago Pago. Mabel C. Reid, hereinafter referred to as Mabel, filed her objection to the proposed registration on July 15, 1963. Tu'uaimau Alapati,

hereinafter referred to as Tu'uaimau, filed his objection to the proposed registration on July 31, 1963. Both Mabel and Tu'uaimau claimed a better right to the title. This resulted in each of the objectors and the applicant becoming candidates for the title Tali, hence this litigation. See Sec. 6.0106, Code of American Samoa, 1961 Edition.

■ Sec. 6.0101 of the Code sets out the basic qualifications which a person must have to be eligible to succeed to a matai title. It is clearly established from the evidence that each of the three candidates is eligible to be registered as the holder of a matai title.

■ Sec. 6.0107 of the Code sets out the considerations which shall guide the Court in determining which of the opposing candidates shall be registered as the holder of a matai title. It reads as follows:

"CONSIDERATION GIVEN BY COURT: In the trial of matai title cases, the High Court shall be guided by the following considerations, in the priority listed:

"First: The best hereditary right in which the male and female descendants shall be equal in families where this has been customary, otherwise the male descendant shall prevail over the female.

"Second: The wish of the majority or plurality of those clans of the family as customary in that family.

"Third: The forcefulness, character, personality, and knowledge of Samoan custom.

"Fourth: The value of the holder of the matai title to the family, the village, and the country."

Each of the three candidates filed his pedigree with the Court and testified with respect to his descent from a former holder of the Tali title. It is undisputed that Applicant Talalele has $1/8$ Tali blood and that Mabel has $1/32$ Tali blood. Tu'uaimau's pedigree as filed reflected that he had $1/4$ Tali blood. However, his pedigree was challenged by Mabel and later by Talalele. Mabel insisted that one Tali Pouono, who Tu'uaimau claimed as his grandfather, had never existed. Neither Mabel nor Talalele included Tali

460

Pouono in their pedigree. After questioning by the Court, Tu'uaimau could not logically explain the existence of Tali Pouono as his grandfather, who according to Tu'uaimau, would be 160 years old if now living. Tu'uaimau testified that his grandfather Pouono acquired the title Tali in 1829 at the age of about 25. We will not go into great detail since the record reflects all the testimony on this matter, but this Court is of the unanimous opinion, after considering the witness' demeanor and unsatisfactory answers and also considering the span of life of Samoans 150 years ago, that Tu'uaimau's grandfather did not hold the title Tali Pouono and that said Tali Pouono should be disregarded in estimating the Tali heredity of Tu'uaimau. When asked by the Court whom he would claim descendance from if Tali Pouono were disregarded, Tu'uaimau answered he would claim as the descendant of Tali Vaivai, the same Tali from which Mabel claimed descendance. On argument, Lolo, counsel for Tu'uaimau, stated that if Tali Pouono were disregarded, Tu'uaimau would have $1/8$ Tali blood. This Court is of the unanimous opinion that after disregarding Tali Pouono, as we now do, that leaves Tu'uaimau with $1/32$ hereditary right to the Tali title. Both of the Samoan judges agreed with this.

■ It follows therefore that Talalele with $1/8$ Tali blood prevails on the issue of hereditary right over Mabel and Tu'uaimau. We hold that Mabel and Tu'uaimau are on an equal level on the issue of hereditary right, each having $1/32$ Tali blood.

Concerning the matter of the clans, there was conflict not only on the number of clans favoring each individual candidate, but there was disagreement also as to the number of clans in the Tali Family.

■ The provision in the Code reads: "The wish of the majority or plurality of those clans of the family as customary in that family." The Legislature of American

Samoa, either in its wisdom or as a result of an oversight, failed to define the word "clan." There are different theories as to what a clan means. Some argue that the number of clans in the family is determined by the number of offspring of the original holder of the title, and that each of the children of the original holder who gets married and has children constitutes a clan, no matter how long the title has been in existence or how many different families there are. Another theory is that there are as many clans in the Family as there have been holders of the title, each title holder giving origin to another clan. Still another theory is that the number of clans depends on the number of families of the different title holders with the restriction that when two or more brothers or sisters hold the title consecutively, it should only count as one clan.

■ This Court does not propose—and it would not, even if it could—to advise the Legislature on the wording of this or any other statute, but we believe that until the term "clan" is defined or clarified, the question of interpretation will be up to the Court, and we will not hesitate to give it a definite interpretation when it shall become absolutely necessary, unless the Legislature makes its own clarification.

Two of the three candidates presented pedigrees and testified and argued that there was only one (1) clan in the Tali Family because Lolopo, whom all three candidates agree was the original holder of the title, had only had one child who was later to become Tali Aetonu. The other candidate, Mabel, insisted in her pedigree, testimony and arguments that there were six (6) clans in the Tali Family and that five (5) of these clans favored her, even though her testimony indicated there had been nine (9) holders of the Tali title. Each of the two candidates claiming only one clan in the Tali Family agreed that the present members of that same one clan were divided as to whom they favored to hold

the title and that different members of this one clan favored each of the three candidates for the title. We should point out here that Mabel pointed out from the members of the audience purported representatives of the different families or "clans" in the Tali Family favoring her candidacy.

■ If we go along with the proposition of the majority of the candidates that there is only one clan in the Tali Family and that each of the three candidates is favored by different members of this one clan, then this Court is faced with the necessity of disregarding the consideration concerning clans, since one clan cannot be dissected or divided amongst the three candidates. As a matter of fact, Lolo, counsel for one of the candidates, specifically asked the Court to disregard the clan consideration. This Court is discounting the issue of the number of clans, not necessarily because we agree with the definition of "clan" as expressed by Talalele and Tu'uaimau, but because their definition has the effect of dispensing with the question of who the majority of the clans favor for the candidacy, and because this Court can arrive at a definite selection of the holder of the title without the necessity of committing itself to any definition of the word "clan."

This Court is of the unanimous opinion that all three candidates rank equally in the number of clans favoring them and that the consideration of the number of clans favoring each candidate should be and the same is hereby discounted for the purpose of selecting the new holder of the Tali title.

■ We now come to the consideration of the forcefulness, character, personality, and knowledge of Samoan customs.

After considering the testimony, evidence and argument, and taking into specific account the demeanor, personality, presence of mind, the clarity, speed and correctness with which the answers were given, the self-confidence and other

463

qualities reflected from the speech and behavior of the candidates, this Court is of the unanimous opinion that candidate Mabel C. Reid ranks first in forcefulness, character, personality, and knowledge of the Samoan customs. The Court is further of the unanimous opinion that Tu'uaimau Alapati ranks second and Talalele Nuaea ranks third in this same category.

Mabel is 54 years old; she is the President of the Public Welfare Organization with 16 members; she is the President of the Sacred Heart Society, a religious organization with 65 members; she is a high school graduate; a 1929 graduate of the Sacred Heart Academy, a junior college in Honolulu, where she majored in business; she was selected as the personal representative of the Governor of American Samoa on a delegation to New Zealand; she headed the Legislative delegation to New Zealand in the absence of the Speaker of the House, the other five members of the delegation being men; she was a member of the Legislature of American Samoa for six years, four years in the House of Representatives for Mauputasi County and two years as representative of part-Samoan people as a member of the Legislature; she was the first Clerk of the Legislature of American Samoa; she worked for the Government of American Samoa for a period of 13 years as secretary to the Supply Officer, then also Treasurer, as private secretary to Governor Moyer, and as Clerk of the High Court for one year. She holds the title "Sinata'aga" in the Village of Vatia.

In addition to the above accomplishments and qualifications, Mabel is very fluent in both the English and Samoan languages. There was no indication from the testimony or the evidence reflecting in any manner against her good character. She testified that she was well versed in the Samoan customs and traditions and did an excellent job of answering questions on this subject from the Samoan

judges and on cross-examination by counsel for Talalele and Tu'uaimau. Mabel testified she had good personal and family relations with the members of the Tali Family and with the chiefs and matais of Pago Pago. Mabel further testified that she has always been concerned with the problems and general welfare of the Tali Family. She testified she had a good knowledge of the genealogy and the lands of the Tali Family, and her testimony and her answers to questions on the witness stand supported her claims.

Last, but not least, Mabel served as her own counsel while the other two candidates relied on their counsel to a great extent to put forth their claim. There is certainly nothing wrong with parties having counsel, and at times this proves better for all concerned, but the way Mabel handled her own case was a credit to her and more emphatically brought out her qualities of forcefulness, character, personality and knowledge of Samoan customs, as well as her value to the family, the village and the country in comparison with the other two candidates for the title.

Candidate Tu'uaimau started his testimony by stating he was not sure of his age, that he was about 57 years old. Tu'uaimau testified he did not know his grandfather, whom he called Tali Pouono; that he did not know when Pouono had died; that he did not remember when his (Tu'uaimau's) father or mother died, even though he was 15 or 16 years old when his father died and older when his mother died. He testified that his father Tauala died between the age of 60 and 70 years and had died in 1889, even though he, Tu'uaimau, was not born until 1905. Later, in answer to Lolo's question, he changed dates again. He stated his father was living in 1900 and had died about 15 years after the Government was established or about 1915. In other words, from one question to the next his father increased his life span by 26 years, or almost one generation. He also answered Lolo that his father was about 30 years old or so

465

when Tauala's father Pouono died. In answer to Leota's question, Tu'uaimau claimed that Vaivai was Pouono's father. Tu'uaimau testified he had lived in Utulei for the last 20 years. At one time Tu'uaimau stated that he and Mabel descended from Vaivai and then changed to say that they descended from different marriages of Vaivai. Tu'uaimau stated that his father Tauala was married six times and that he was the issue of the last marriage and that he had about 15 brothers and sisters through his father.

The above testimony is referred to not to arrive at Tu'uaimau's hereditary right but to show his indecisiveness and lack of knowledge even of his immediate family.

Concerning his forcefulness, character, personality and knowledge of Samoan customs, Tu'uaimau testified that he finished the sixth grade in Pastor's School in 1921; that he graduated from high school in 1925; that he graduated from Poyer's School from the 9th grade in 1930; that he completed an agricultural course maybe in 1947 or 1948; that he completed an adult education course in American Samoa in 1963 for which he received a certificate.

Tu'uaimau testified he worked as a clerk in Poyer School in 1931; that he was teaching school in 1932 at the same time he was attending Poyer School; that he was a mess sergeant in the Armed Forces during World War II; that he taught cooking to veterans in 1945; that he was elected chaplain or pastor for the Veterans of Foreign Wars in Samoa in 1951; that he was elected to the House of Representatives for Mauputasi District in 1955–56. Tu'uaimau testified that he has worked as a cook in the Hospital of American Samoa for 20 years and that he now supervises and instructs 12 employees under him in the kitchen; that he earns a salary at the hospital of $1686.00 per year; that he has other income from crops and relatives for a grand total of $5,586.00. Tu'uaimau testified that he became a lay preacher and was ordained in 1946, and became a deacon

in 1951; that he has held several offices in the church and was elected treasurer in a number of organizations. He testified that he has held the matai title Tu'uaimau for 12 years. Tu'uaimau's knowledge of the English language could be termed fair, but he is a long ways from being fluent. A number of inconsistencies appear in the dates he enumerated and with his testimony that he has worked at the hospital continuously for 20 years.

In testifying as to his value to the family, the village and the country, Tu'uaimau stated that his experience as a matai would serve him well and that he would do what he has done as a matai in Utulei to bring peace and harmony in the Tali Family if selected. Among other things, Tu'uaimau stated he would be of value to the country by making the people contribute to the church. In answer to Leota's question, Tu'uaimau stated that he had never attended a meeting of the Tali Family in Pago Pago. He testified that Tali Fuamaila received the title Tali in 1947 and that Tali Filiga, Fuamaila's predecessor, had died in 1950, at which time he still held the title Tali. Then he testified that maybe Tali Filiga had died in 1940 instead of 1950, and that he guessed that the Tali title was vacant from 1940 through 1947. Tu'uaimau testified that before Tali Filiga the title Tali was held by Tali Tauli and that Tali Tauli had died between 1940 and 1942. As the answers to the questions indicate, Tu'uaimau was rather inadequate and indefinite concerning the Tali title.

Talalele testified he had ¼ Tali blood and insisted that Tu'uaimau had no Tali blood at all. Talalele testified he did not know if Mabel had $\frac{1}{32}$ Tali blood. In answer to Mabel's questions, Talalele stated that Tali Laau had no brother; that he did not know who Tali Filiga's father or mother were; that he did not know if Aetonu #2 was Tali Filiga's father; that he did not know about Tali Vaivai or Tali Talimanava; that Tali Aetonu #1 had no children.

Talalele's knowledge of the Tali Family tradition left much to be desired.

In connection with the issue of forcefulness, character, personality and knowledge of the Samoan customs, Talalele claimed he was 100% qualified to hold the Tali title. He testified that he could get the family to live in peace, send the children to school and be of better use to the country. He testified he had been a carpenter for many years; that he had been in the Armed Forces in World War II; that he was a first-rate carpenter working for the Government from 1945 to the present and that he was also a hand-craftsman.

Talalele testified he had gone to the 7th grade in school and had three years vocational training as a carpenter after the war. He testified that he had never been a matai, but had been a leading young man for a lesser matai. He testified he earned between $280.00 and $300.00 per month working for the Government as a carpenter, but then stated that he was presently working for Van Camp and had done so for several months, following his being laid off on leave without pay by the Government.

Talalele testified he was familiar with the Samoan customs and the tradition of the Tali Family. He said he had served the Tali title for 25 years. Talalele testified he could be of great value to the family; that he would speak for the family through the village and represent the village in the county. He said he had never run for public office but always voted. Talalele testified he spoke the English language fairly well, but it was apparent that he was far from being fluent. Talalele's demeanor and behavior on the witness stand left very much to be desired in the matter of forcefulness, character and personality. These same deficiencies made it apparent that he did not possess the qualifications to be of the most value to the family, the village and the country.

We have already stated that in the matter of forcefulness, character, personality and knowledge of the Samoan customs, Mabel ranked first, prevailing over Tu'uaimau and Talalele, and that Tu'uaimau ranked second prevailing over Talalele.

In the consideration of value to the family, the village and the country, this Court is of the unanimous opinion that candidate Mabel C. Reid ranks first, prevailing over Talalele and Tu'uaimau, and that Talalele ranks second, prevailing over Tu'uaimau on this issue.

Since this Court is holding that all three candidates rank equally in the consideration of the number of clans favoring each candidate, this has the effect of this consideration being discounted in the selection of the Tali title holder, leaving the remaining three issues to be considered.

Since we find that candidate Mabel C. Reid ranks first and prevails over Tu'uaimau and Talalele on the third and fourth issues, and is on an equality with Tu'uaimau on the first issue (heredity), Talalele ranking first on this issue, it follows that she, the said Mabel C. Reid, should be registered as the holder of the matai title Tali attached to the Village of Pago Pago. However, since a person cannot hold two matai titles at the same time, it follows that before she can be registered as the Tali, Mabel C. Reid must resign from any other matai title she may be presently holding.

Accordingly, it is the unanimous decision of this Court, and it is hereby ORDERED, ADJUDGED AND DECREED that Mabel C. Reid be registered as the holder of the matai title Tali, attached to the Village of Pago Pago, upon her resignation from any matai title she may presently hold within three weeks from the date of this decree, which is ——————— 1964.

The Registrar of Titles will be advised of this decree.

Costs in the amount of $62.50 are hereby assessed against Talalele and Tu'uaimau, each of them to pay the amount of $31.25 within 30 days.